**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| J. C. CHAVEZ HERNANDEZ,<br>Plaintiff,<br>v.<br>KRISTI NOEM, et al.,<br>Defendants. | Case No. 25-cv-05889-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF No. 27] |

Before the Court is Defendants United States Department of Homeland Security Secretary Kristi Noem, United States Citizenship and Immigration Services Director Angelica Alfonso-Royals, and United States Attorney General Pam Bondi's (collectively, the "Government") motion for summary judgment. ECF No. 27 ("Mot."); *see also* ECF No. 30 ("Reply"). Plaintiff J. C. Chávez Hernández opposes. ECF No. 28 ("Opp."). At the request of the Parties, the Court submitted the motion without oral argument. ECF No. 37. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

Plaintiff is a citizen of Mexico who seeks a writ of mandamus to compel United States Citizenship and Immigration Services ("USCIS") to adjudicate his petition for U Nonimmigrant Visa ("U visa"), or, in the alternative, place him on the regulatory waiting list. Because familiarity with the statutory and regulatory framework is helpful to understanding Plaintiff's claims, the Court walks through the legal backdrop before turning to the facts and procedural history.

### A. Statutory and Regulatory Framework

The U visa program was established in 2000 to provide relief, including lawful nonimmigrant status and employment authorization, to noncitizens who are victims of serious

United States District Court
Northern District of California

crimes and who cooperate with law enforcement. *See* 8 U.S.C. § 1101(a)(15)(U) (providing statutory eligibility criteria); 8 U.S.C. § 1184(p) (providing agency duties and procedures for applying). Under 8 U.S.C. § 1184(p)(2)(A), only 10,000 such visas may be issued each year. Although USCIS originally estimated that it would receive approximately 12,000 U visa petitions per year, the number of petitions it actually receives has substantially exceeded that figure. ECF No. 27-1 ("Pearl Decl.") ¶¶ 13–14. USCIS received more than 20,000 petitions each year since 2012, including more than 30,000 per year from 2015 through 2018, and again from 2022 through 2024. *Id.* ¶ 15. On October 1, 2025, the start of fiscal year 2026, USCIS began reviewing petitions filed on or before April 30, 2017. *Id.* ¶ 40.

Because USCIS anticipated receiving more petitions per year than could be adjudicated under the cap, the U visa regulations provide for a waiting list. *See* 8 C.F.R. § 214.14(d)(2). If USCIS determines that a petitioner is otherwise eligible for a U visa but cannot be approved for one "due solely to the cap," the petition "must be placed on a waiting list." *Id.* Waiting list priority is determined by the date the petition was filed. *Id.* Petitioners on the waiting list are "grant[ed] deferred action or parole." *Id.* Deferred action protects noncitizens against removal from the United States. *De Sousa v. Dir. of USCIS* ("*De Sousa II*"), 755 F. Supp. 3d 1266, 1268 (N.D. Cal. 2024). Parole permits a noncitizen to enter the United States temporarily while the investigation of eligibility for admission takes place. *Id.* at 1270. USCIS may also authorize employment for petitioners on the waiting list and qualifying family members. 8 C.F.R. § 214.14(d)(2). However, because of the volume of applications, the regulatory U visa waiting list is backlogged. *De Sousa II*, 755 F. Supp. 3d at 1269.

Separate from the regulatory waiting list, USCIS also has statutory authority to "grant work authorization to any alien who has a pending, bona fide" application for a U visa. *See* 8 U.S.C. § 1184(p)(6). In part to alleviate some of the U visa waiting list backlog, USCIS implemented the "bona fide determination process" to grant employment authorization documents ("EADs") and deferred action to eligible bona fide U visa petitioners. *See* USCIS, Policy Alert: Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment Authorization and Deferred Action for Certain Petitioners (June 14, 2021). To determine whether

United States District Court
Northern District of California

a petition is bona fide, USCIS evaluates the petitioner's compliance with initial evidence requirements and successful completion of background checks. *See* USCIS, Policy Manual, Vol. 3, Part C, Ch. 5 (available at https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5). If a U visa petition is deemed bona fide, "USCIS then considers any national security and public safety risks, as well as any other relevant considerations, as part of the discretionary adjudication." *Id.* If the petitioner clears those hurtles, USCIS may exercise its discretion to grant the petitioner "deferred action," along with an EAD. *Id.* Petitioners who receive a bona fide determination are generally not considered for the regulatory waiting list. *Id.* Thus, the "next adjudicative step [for petitioners with a bona fide determination] is final adjudication when space is available under the statutory cap." *Id.*

USCIS generally adjudicates U visa petitions in date-of-filing order, with the oldest petitions receiving the highest priority. Pearl Decl. ¶ 26. However, there are various processes by which U visa petitioners can request expedited adjudication. *See id.* ¶¶ 27–28.

**B. Facts and Procedural History**

Plaintiff entered the United States in January 1998. ECF No. 1 ("Compl."), Ex. C ("Chávez Hernández Affidavit") ¶ 2. He was the victim of an assault on April 3, 2004, and gave a statement to the police. *Id.* ¶¶ 3, 11–12, 30–32. On January 28, 2019, Plaintiff filed a Form I-918, Petition for U Nonimmigrant Status and a Form I-765, Application for Employment Authorization. Pearl Decl. ¶ 35; *see also* Compl., Ex. A.

Plaintiff brought the instant action on July 14, 2025, seeking, *inter alia*, an order mandating that USCIS adjudicate Plaintiff's U visa petition or place Plaintiff on the U visa waiting list. Compl. at Prayer for Relief. Plaintiff brings a claim for violation of the Administrative Procedure Act ("APA") on the ground that the Government has unlawfully withheld action by failing to adjudicate Plaintiff's U visa petition or place him on the waiting list. Compl. ¶¶ 67–79. Plaintiff also brings a claim for violation of the Due Process Clause of the Fifth Amendment, alleging that the Government has violated his due process rights by failing to promulgate adequate regulations and adjudicate his U visa petition or put him on the waiting list. Compl. ¶¶ 80–91.

On August 8, 2025, USCIS determined Plaintiff's Form I-918 petition to be bona fide, and

granted Plaintiff an EAD and deferred action, valid from January 8, 2024, to January 7, 2028. Pearl Decl. ¶ 37; Compl., Ex. B. The Government now moves for summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it might affect the outcome of the lawsuit, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* On an issue for which the nonmoving party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50.

Once the moving party has met its initial burden, the burden of production shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Id.* at 322.

The Court's function on a summary judgment motion is not to make credibility

United States District Court
Northern District of California

determinations or weigh conflicting evidence. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented and the inferences drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *Id.*

## III. DISCUSSION

In support of its motion for summary judgment, the Government argues that (1) Plaintiff does not have standing to pursue either a full adjudication under the statutory cap or a waiting list adjudication; and (2) if the Court finds the Plaintiff has standing, then Plaintiff's U visa adjudication has not been unreasonably delayed. The Government also seeks summary judgment as to Plaintiff's due process claim. In opposition, Plaintiff argues that he has Article III standing and the Government has not shown that the delays in adjudicating his U visa petition and conducting a waiting list determination are reasonable.

### A. Standing

As a threshold matter, the Government contends that Plaintiff lacks standing to seek either a full adjudication under the statutory cap or a waiting list adjudication because he has already received a bona fide determination, employment authorization, and deferred action. Mot. at 11–14. In response, Plaintiff argues that he has suffered a concrete injury through USCIS's inaction. Opp. at 7–8.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The plaintiff bears the burden of establishing that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*; *see also FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990). An injury in fact must be "'concrete' to ensure that it is 'real and not abstract,' and 'particularized' so that it 'affects the plaintiff in a personal and individual way' as opposed to a

'generalized grievance.'" *Kumar v. Koester*, 131 F.4th 746, 751–52 (9th Cir. 2025) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (internal alteration omitted)).

**1. Full Adjudication**

As an initial matter, the Government argues that Plaintiff lacks standing to seek a full adjudication because his injury is not redressable—the statutory cap is the source of the delay, not USCIS's inaction. Mot. at 11–12. Although Plaintiff clarifies that he is not seeking a U visa granted in excess of the statutory cap or ahead of earlier-filed applications, he nonetheless contends that the statutory limit is no excuse for the agency's delay in adjudicating his petition. Opp. at 9.

Despite Plaintiff's concession, for the sake of completeness, the Court finds that Plaintiff's alleged injuries flowing from USCIS's failure to immediately grant his U visa petition are not redressable by the Court. The number of U visas is statutorily capped at 10,000 per year. 8 U.S.C. § 1184(p)(2)(A). When U visas become available each year, USCIS prioritizes the oldest-filed petitions. USCIS, Policy Manual, Vol. 3, Part C, Ch. 7 (explaining that the regulatory framework "clearly envisions 'the oldest petitions receiving the highest priority') (quoting 8 C.F.R. § 214.14(d)(2)). "Because it would violate binding statutes and regulations," the Court finds that it "lacks the authority to order USCIS to grant more than 10,000 principal U visas per year, [or] grant [Plaintiff] a U visa before those on the waiting list." *Salinas Ramirez v. Noem*, No. 25-cv-04085-SLD-RLH, 2026 WL 579500, at *4 (C.D. Ill. Mar. 2, 2026). Accordingly, to the extent the Government seeks summary judgment as to Plaintiff's claim for a full U visa adjudication, the motion is granted.

**2. Waiting List Determination**

The Government also insists that Plaintiff lacks standing to compel a waiting list determination because he cannot establish an injury in fact, as he already has a bona fide determination, employment authorization, and deferred action. Mot. at 12–14. In response, Plaintiff urges that Defendants fail to appreciate the difference between a bona fide determination and a waiting list determination, including because the regulatory waiting list "carries legal significance beyond the discretionary benefits associated with a [bona fide determination.]" Opp.

at 6–7.

**a. Benefits**

With respect to the availability of benefits, Plaintiff points out that a key distinction between a bona fide determination and a waiting list determination lies in the availability of parole. Pursuant to 8 C.F.R. § 214.14(d)(2), USCIS "will grant deferred action or parole," along with employment authorization to those on the waiting list, while bona fide determinations do not provide the possibility of parole. The Government responds that because 8 C.F.R. § 214.14(d)(2) is phrased in the disjunctive, describing the availability of "deferred action *or* parole" (emphasis added), Plaintiff cannot show that he would be entitled to parole. Reply at 3–4.

The Court is in full agreement with the Government that Plaintiff, if placed on the waiting list, would not be *entitled* to parole, because he has already received deferred action. However, the Government does not contest that Plaintiff currently has no pathway to *seek* parole. The Court acknowledges a split of authority with respect to whether the loss of parole consideration constitutes a concrete injury. In *De Sousa II*, at the summary judgment stage, the court found based on the undisputed evidence that the plaintiffs' "opportunity" to seek parole if placed on the waiting list would "be wholly illusory" because "they would not have any more of a chance at parole than they would have with only a bona fide determination." 755 F. Supp. 3d at 1275–76. Other courts have found that, because "the denial of a [waiting list determination] carries with it the loss of parole *consideration*, that denial is more than a mere procedural violation and constitutes an injury in fact." *Bruno v. Dir. of USCIS*, 791 F. Supp. 3d 1249, 1259 (D. Colo. 2025) (emphasis added); *see also De Sousa v. Dir. of USCIS* ("*De Sousa I*"), 720 F. Supp. 3d 794, 802 (N.D. Cal. 2024) (finding, at the motion to dismiss stage, that "the [bona fide determination] Plaintiffs have suffered a concrete injury by losing the opportunity to even be considered for" advance parole, which is "a valuable benefit").

Here, unlike in *De Sousa II*, the Government has not submitted evidence establishing that Plaintiff would not be considered for parole if added to the waiting list. Absent such evidence, the Court finds that the lack of opportunity to be considered for parole constitutes a concrete harm sufficient to confer standing. *See Jesus, et al. v. Jaddou*, No. 23-cv-34, 2025 WL 5074664, at *4

(D. Vt. Jan. 5, 2025) (denying a motion to reconsider a finding that domestic plaintiffs with bona fide determinations had standing due to the lack of opportunity to seek parole, and noting that the contrary holding in *De Sousa II* "turned on the parties' evidence").

**b. Legal Significance**

The Government also argues that the "difference between a [bona fide determination] and a [waiting list determination] is one of process, not substance." Mot. at 1–2. In response, Plaintiff maintains that placement on the waiting list carries standalone legal significance and stability. Opp. at 7.

Plaintiff has the better argument. A waiting list adjudication constitutes a determination by USCIS that the "petitioner is eligible in all respects for U nonimmigrant status, but for the statutory cap." Pearl Decl. ¶ 23; *see also* USCIS, Policy Manual, Vol. 3, Part C, Ch. 6 (available at https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-6) ("To be placed on the waiting list, a petitioner must establish all statutory and regulatory requirements by a preponderance of the evidence."). By contrast, the bona fide determination process includes only a determination of whether the petition is "bona fide," whether the petitioner poses a risk to national security or public safety, and whether the petition otherwise merits a favorable exercise of discretion. Pearl Decl. ¶¶ 20–21 (citing USCIS, Policy Manual, Vol. 3, Part C, Ch. 5). A petition is bona fide where (1) the petitioner "has properly filed a complete Petition for U Nonimmigrant Status," and (2) "USCIS has received the result of the principal petitioner's background and security checks based upon biometrics." USCIS, Policy Manual, Vol. 3, Part C, Ch. 5. Thus, a key "difference between the two programs is the timing of the full review." *Salinas Ramirez*, 2026 WL 579500, at *6. Those on the waiting list have already "received a full evaluation of their petition," while those with a bona fide determination receive a full file review only at the final adjudication stage. *See id.*

The *Salinas Ramirez* court found that this difference in the timing of the full review did not give rise to standing because it did not make the relief the plaintiff sought (receipt of a U visa) more likely or more expeditious. *Id.* Here, by contrast, Plaintiff seeks a waiting list determination as an end in itself. Because he has not received the full review, the Court finds that Plaintiff has



United States District Court
Northern District of California

United States District Court
Northern District of California

suffered a concrete injury sufficient to confer standing.

Furthermore, as the bona fide determination process is governed by USCIS's internal policy manual, USCIS "wields sole and unadulterated discretion" to withdraw the process at any time. *See Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 441 (6th Cir. 2022). By contrast, the waiting list is a regulatory process, meaning that to change it, USCIS would need to follow the full rule-making procedure, including public notice and comment. *Reyes Olmos v. USCIS*, 785 F. Supp. 3d 459, 471 (D. Neb. 2025). Because "[a] future administration could rescind the [bona fide determination] process just as easily as [an] administration established it; the program could be retracted before any of Plaintiffs' applications are adjudicated by USCIS." *Barrios Garcia*, 25 F.4th at 441.

Some courts have found that the legal distinction between a bona fide determination and a waiting list determination is insufficient to confer Article III standing on applicants seeking a waiting list adjudication because the potential loss of the policy establishing the bona fide determination process is not "certainly impending." *See, e.g.*, *De Sousa II*, 755 F. Supp. 3d at 1275 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)); *Salinas Ramirez*, 2026 WL 579500, at *7 ("[T]he Court has found no authority suggesting that distinction between a program created by regulation and one created by agency policy is legally relevant for purposes of standing, especially when there is no allegation that termination of a policy statement is impending."). This Court is not persuaded by that reasoning, however. The nature of an agency policy is that it can be revoked with no notice. In the Court's view, the present instability of the bona fide determination policy—coupled with the fact that Plaintiff's petition has not received a full review—is what makes Plaintiff's injury concrete and sufficient to confer standing. *See Martinez v. USCIS*, No. EDCV 25-01880-KK-EX, 2025 WL 4739804, at *3 n.3 (C.D. Cal. Nov. 26, 2025) (finding a claim for failure to timely adjudicate a waiting list determination ripe because, regardless of whether Plaintiff received a bona fide determination, the policy could be rescinded at any time).

* * *

To summarize, the Court finds that Plaintiff does not have standing to seek a full

adjudication of his U visa petition. However, the Court further finds that because Plaintiff has yet to receive a waiting list determination, which is required by regulation and provides different benefits and more certainty than a bona fide determination, Plaintiff has suffered an injury that gives rise to Article III standing. *See Reyes Olmos*, 785 F. Supp. 3d at 472.

**B. TRAC Factors**

Having found that Plaintiff has standing to seek a place on the waiting list, the Court turns to the issue of whether the Government has shown that its delay in conducting a waiting list determination is reasonable. Through 8 C.F.R. § 214.14(d)(2), Congress imposed a nondiscretionary obligation on USCIS to place eligible petitioners on the waiting list. *See* 8 C.F.R. § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list . . . .") (emphasis added). Moreover, the APA requires agencies to conclude matters "within a reasonable time." 5 U.S.C. § 555. To evaluate the reasonableness of agency delay, courts apply the six-factor test set forth in *Telecommunications Research & Action Center v. F.C.C. ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984) (the "*TRAC* factors"). *See also Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Brower*, 257 F.3d at 1068 (citation omitted); *see also TRAC*, 750 F.2d at 80.

**1. First *TRAC* Factor: Rule of Reason**

"Where a visa petitioner alleges unreasonable delay, the first factor requires courts to consider both the length of the delay and the reasons for the delay." *Pham v. Scott*, 787 F. Supp. 3d 1124, 1142 (S.D. Cal. 2025). The Court considers "whether there is any rhyme or

reason for the Government's delay—in other words, whether the agency's response time . . . is governed by an identifiable rationale." *Poursohi v. Blinken*, No. 21-cv-01960-TSH, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16, 2021) (internal quotation marks and citation omitted). This is the most important factor in the analysis. *See NRDC v. United States EPA*, 956 F.3d 1134, 1139 (9th Cir. 2020).

Here, the length of the delay—more than seven years—is significant. Plaintiff filed his petition for a U visa on January 28, 2019, and he has still not had a waiting list determination. Pearl Decl. ¶ 35. The Government maintains that USCIS clearly follows a rule of reason because it prioritizes the oldest petitions for U visa adjudication subject to the statutory cap. Reply at 5–6 (citing Pearl Decl. ¶¶ 12, 24, 41).

The Court is in full agreement "that this 'first in, first out' policy for processing U-visa petitions provides an adequate rule of reason." *Ayala v. Noem*, No. 25-cv-5185-JNW, 2025 WL 1616075, at *5 (W.D. Wash. June 5, 2025) (collecting cases). The Court also agrees with the Government that this rule of reason plus the statutory cap explain the lengthy delay in a full adjudication of Plaintiff's U visa petition. *See Pham*, 787 F. Supp. 3d at 1143 (finding that an apparently unreasonable delay in adjudication of the plaintiffs' U visa petitions was explained by an identifiable rationale, namely first-in, first-out processing).

The problem for the Government is that it does not address whether a rule of reason also governs the order in which it conducts waiting list determinations, which "are nondiscretionary per DHS regulations." *See Barrios Garcia*, 25 F.4th at 443 ("Per DHS's regulations, principal petitioners who would be eligible for U-visas but for the 10,000-person cap must still be placed on the waitlist, notwithstanding the existence of the [bona fide determination] process."). Here, however, the Government concedes that it shunts petitioners with bona fide determinations to the side, submitting evidence that "USCIS generally does not conduct waiting list adjudications for aliens for whom it has already granted [bona fide determinations][,] EADs and deferred action." Pearl Decl. ¶ 22 (citing USCIS, Policy Manual, Vol. 3, Part C, Ch. 5). Accordingly, the Government has not established that it follows a rule of reason as to waiting list determinations because it concedes that it does not conduct waiting list adjudications for petitioners who have

already received benefits through the bona fide determination process.

Because of the long delay in conducting Plaintiff's waiting list determination and the Government's failure to offer a rule of reason with respect to the order in which it conducts such adjudications, the Court finds that the first *TRAC* factor favors Plaintiff.

**2. Second *TRAC* Factor: Congressional Timetable**

Second, courts consider whether Congress has provided "a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *Brower*, 257 F.3d at 1068 (citation omitted). The Court accords this factor minimal weight because there is no congressional timetable for the adjudication of waiting list determinations. Although Plaintiff contends that "Congress's creation of the waiting-list mechanism reflects an intent for orderly, timely adjudication," Opp. at 11, the regulatory waiting list does not establish a timetable for adjudication.

Thus, the Court concludes that the second *TRAC* factor weighs in favor of the Government.

**3. Third and Fifth *TRAC* Factors: Nature of Interests**

"The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay." *Poursohi*, 2021 WL 5331446, at *9. The Government does not address this factor. Plaintiff contends that as the father of two young children, his health and welfare are at stake without the stability that comes with placement on the waiting list. *See* Chávez Hernández Affidavit ¶¶ 23–24. Because the waiting list is based in regulation rather than agency policy and would afford Plaintiff a more fulsome review of his petition, a waiting list determination would offer Plaintiff additional stability. Thus, the Court finds that this factor weighs slightly in favor of Plaintiff.

**4. Fourth *TRAC* Factor: Effect of Expediting Delayed Action**

"The fourth *TRAC* factor requires the Court to consider the effect of expediting adjudication of plaintiffs' applications on agency action of a higher or competing priority." *Jain v. Renaud*, No. 21-cv-03115-VKD, 2021 WL 2458356, at *6 (N.D. Cal. June 16, 2021) (internal quotation marks and citation omitted). "Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line

United States District Court
Northern District of California

would simply move all others back one space and produce no net gain." *Id.* (collecting cases). The Court finds that this is the case here, and thus the fourth *TRAC* factor favors the Government.

**5. Sixth *TRAC* Factor: Impropriety**

The sixth *TRAC* factor requires the Court to consider any impropriety on the part of the Government. No impropriety appears on this record. The sixth *TRAC* factor favors the Government.

**6. Conclusion**

The first *TRAC* factor, considered to be the most important, favors Plaintiff rather than the Government. The third and fifth factors also favor Plaintiff. The second, fourth, and sixth factors weigh in favor of the Government. On balance, the Court concludes that the Government has failed to meet its moving burden to show by undisputed facts that its delay in conducting a waiting list determination is reasonable. Accordingly, as to Plaintiff's APA claim seeking a waiting list determination, the Government's summary judgment motion is denied.

**C. Due Process Claim**

The Government also moves for summary judgment as to Plaintiff's due process claim on the grounds that any harm caused by USCIS's failure to promulgate regulations is not redressable and Plaintiff has not identified a protected liberty or property interest. Mot. at 14–15. Plaintiff does not respond to the Government's motion as to this claim.

Plaintiff's due process claim is based in the allegation that, pursuant to the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006), USCIS was directed to promulgate regulations to implement the U visa program no later than 180 days after the date of enactment, or by July 4, 2006. Compl. ¶¶ 84–85. According to Plaintiff, USCIS has failed to timely promulgate "the necessary regulations to provide a consistent, lawful mechanism for victims of qualifying crimes to apply for and obtain U visas as Congress intended." *Id.* ¶ 86. Plaintiff alleges that he has been harmed by the dovetailing of that failure with USCIS's delay in adjudicating his U visa petition and conducting a waiting list determination. *Id.* ¶ 90.

The Government argues that Plaintiff lacks standing with respect to his due process claim

because he cannot show that the remedy for the alleged failure to timely promulgate regulations, an order directing the promulgation of further regulations, would address his injuries. *See Cath. Charities CYO v. Chertoff*, 622 F. Supp. 2d 865, 879 (N.D. Cal. 2008), *aff'd sub nom. Cath. Charities CYO v. Napolitano*, 368 F. App'x 750 (9th Cir. 2010). The Court agrees with the Government, because Plaintiff has not shown how the alleged failure to promulgate sufficient regulations would be redressable by relief the Court can order. Furthermore, Plaintiff has not identified a protected liberty or property interest at issue. *See id.* at 888 (explaining that "a threshold requirement to any due process claim" is a showing of "a protected property or liberty interest"). In fact, Plaintiff's brief does not address his due process claim at all. Accordingly, the Government's summary judgment motion is granted as to Plaintiff's due process claim.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the Government's motion for summary judgment, ECF No. 27, is GRANTED IN PART AND DENIED IN PART as follows:

(1) As to Plaintiff's APA claim, Defendant's motion for summary judgment is GRANTED to the extent Plaintiff seeks a full U visa adjudication and DENIED to the extent Plaintiff seeks a waiting list adjudication.

(2) As to Plaintiff's due process claim, Defendant's motion for summary judgment is GRANTED, and the claim is DISMISSED.

If Plaintiff seeks affirmative relief from the Court, he must file a motion to obtain it.

Dated: August 11, 2026

BETH LABSON FREEMAN
United States District Judge